Alexander ODISHELIDZE, Plaintiff,

v.

AETNA LIFE & CASUALTY CO., Aetna Variable Annuity Life Insurance Company; Aetna Financial Services, Inc., Aetna Life Insurance Company, William O. Bailey, Dean E. Wolcott, James R. Bailey, Thomas L. West, Edward F. Dwight, and Stanley W. Thompson, Defendants.

Civ. No. 85–2293 (JAF).

United States District Court, D. Puerto Rico.

Aug. 21, 1987.

---

Harry Anduze Montaño, José R. Ortiz Vélez, San Juan, P.R., for plaintiff.

David P. Freedman, O'Neill & Borges, San Juan, for defendants.

**OPINION AND ORDER**

FUSTE, District Judge.

We have before us a motion to dismiss filed by defendants. Fed.R.Civ.P. 12(b). Defendants challenge plaintiff's jurisdictional allegations. In so doing, they also claim that plaintiff failed to plead facts upon which federal relief can be granted. We have considered the record as a whole in the light most favorable to the non-moving party, drawing all reasonable inferences to support his contention. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). We find for defendants. Diversity jurisdiction is lacking; there is no cognizable antitrust claim, and no actionable civil RICO cause of action. Under the circumstances, we cannot entertain pendent state claims under Law 75 (Dealers' Act), 10 L.P.R.A. secs. 278(a)– 278(d), or the Puerto Rico Insurance Code.

Plaintiff was an independent insurance agent for Aetna. The agency relationship began in 1971.[1] As Aetna's agent, he was in charge of selling Aetna's insurance policy programs in Puerto Rico. The agreement was modified in 1982 as a result of a general national corporate reorganization implemented by Aetna. As part of their business reorganization, Aetna informed plaintiff that all independent agents were being terminated. Aetna offered to hire plaintiff as its employee in the position of manager of the newly-created Personal Financial Security Division (PFSD), with a salary of about $60,000. Aetna, through the individual defendants, also proposed an automobile and expense account, plus a yearly bonus ranging from 15% to 40%, averaging not less than 25% yearly.

Odishelidze accepted the offer. In 1984, Aetna decided to close its Puerto Rico branch office. As a result thereof, on December 14, 1984, Odishelidze was offered a position with the regional office in Florida. Odishelidze declined and Aetna terminated him from employment.

On April 23, 1985, Odishelidze filed the instant judicial action. He alleges that de-

---

1. During the period 1976–1978, Odishelidze voluntarily left Aetna to work for another insurance company.

fendants conspired to deprive him of his vested interest, property, and contractual rights as an "exclusive general agent." He intends to frame his claim in the context of the federal antitrust laws by claiming that the fraudulent scheme was a concerted activity to unlawfully control the flow of interstate commerce, causing severe economic and financial losses to the plaintiff, as well as loss of his economic activity as an independent agent. Complaint, docket document No. 1, paras. 8–12.

A second cause of action pleads that defendants are also liable under the Racketeer Influenced and Corrupt Organizations' Act of 1970, 18 U.S.C. secs. 1961–1968. The facts to sustain this allegation are:

20. The promises ... made by Aetna to induce plaintiff to enter into an employment contract were part of a fraudulent scheme which [sic] purpose was to terminate exclusive general agency agreements throughout the United States. The ... scheme to defraud, perpetrated in part by use of the U.S. mails and interstate wire communications, constituted operations of Aetna Corporation by defendants through a pattern of racketeering activity within the meaning of 18 U.S.C. sec. 1962(c).

Complaint, docket document No. 1, para. 20.

In addition thereto, plaintiff pleads as a matter of law more than as an averment of fact, two additional causes of action under Puerto Rico's Dealers' Act, Law No. 75, of June 24, 1964, 10 L.P.R.A. sec. 278. He further claims a breach to Puerto Rico's Law No. 17, of April 17, 1931, as amended, 29 L.P.R.A. sec. 175.

The complaint alleges that federal jurisdiction exists pursuant to 28 U.S.C. secs. 1331, 1332; 18 U.S.C. sec. 1961; 15 U.S.C. sec. 1; 10 L.P.R.A. sec. 257; the Insurance Code of Puerto Rico (1976); Law No. 77, of June 25, 1964, 10 L.P.R.A. sec. 257; 29 L.P.R.A. sec. 171; and under the provisions of the Civil Code of Puerto Rico (1930).

Under this carte of allegations, defendants move this court to dismiss plaintiff's action under Fed.R.Civ.P. 12(b). They allege that (a) the complaint fails to state a claim upon which relief may be granted; (b) process was not duly served upon defendants Stanley W. Thompson, Edward F. Dwight, and James R. Bailey; (c) William O. Bailey and Thomas L. West are not amenable to service of process for *in personam* jurisdiction; and (d) federal subject matter jurisdiction is lacking.

### I.

Federal courts exercise limited jurisdiction. A plaintiff cannot activate federal-court jurisdiction by just citing federal laws which he tries to use as a sack to put in all the facts he sees fit. The sack would result too small to collect adequately his extended view of the case. *Prima facie*, the facts as alleged by plaintiff do not serve to establish diversity between the parties, a RICO claim, or a federal antitrust violation. Therefore, the case must be dismissed without prejudice of Odishelidze instituting a different action before an appropriate forum.

Plaintiff avers that defendants conspired to squeeze him out of the market. Relevant to this allegation is Aetna's *modus operandi*. The companies here sued are: Aetna Life and Casualty Co.[2] and its subsidiaries Aetna Variable Annuity Life Insurance Company, Aetna Financial Services, Inc., and Aetna Life Insurance Company. The other individual defendants are all officers of Aetna Life and Casualty Co. It is clear from the record that Aetna Life and Casualty's reorganization was nationwide, *see* docket document No. 9, Exh. 15, Florida Association of Insurance Newsletter, August 7, 1981. The reorganization affected subsidiaries and independent agents. Plaintiff alleges that "Aetna's conspiracy should be viewed as one of vertical proportions ... directed to gain exclusive control of the market while eliminating general

---

**2.** It is pleaded in the complaint that Aetna Life and Casualty Co. is a corporation organized and existing under the laws of the State of Connecticut, with its principal *place of business in Puerto*

*Rico.* Docket document No. 1, averment 21. That alone, defeats diversity jurisdiction. 28 U.S.C. sec. 1332 and *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

agents, which were outside Aetna's corporate structure."[3] Defendants' position is that the antitrust claim does not contain the requisite degree of factual specificity. The complaint does not identify which section of the Sherman Act has allegedly been violated and also fails to allege any contract, combination in restraint of trade, or any attempt to monopolize. In plaintiff's "Surreply to Defendants Reply," it is alleged that the violation ensued under the Sherman Act, sec. 1, 15 U.S.C. sec. 1. It is claimed that:

> [d]efendant's reorganization plan was not of a totally intracorporate character. It included in its scope both corporate affiliates, employees, and non-employees; [to wit:] the general agents which were under contract such as plaintiff.

Docket document No. 14, p. 16. Both parties agree that between Aetna Casualty and the other companies existed a parent-subsidiary relationship. In this context, the applicable law follows the general rule that a violation of a Sherman Act section 1 will accrue only when concerted action is present, *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984).[4] Accordingly, Sherman Act section 1 does not apply to a single firm behavior. There must be some form of agreement or collaboration between two or more actors. L. Sullivan, *Handbook of the Law of Antitrust* at 311 (1977). This rule has expanded to accommodate business realities where a sole corporation engages in predatory commercial activity by shielding itself under various affiliated and subsidiary companies. Therefore, Sherman Act section 1 has been applied in situations where "conspirators" consist of wholly-owned subsidiaries of a single corporation. *Timkin Roller Bearing v. United States,*

341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199 (1951); *Kiefer-Stewart v. Seagram & Sons, Inc.,* 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951) (making of agreements must be present). This rule *does not* extend to unincorporated divisions of a corporation. Unincorporated divisions, not being legally independent entities, cannot be held to have conspired under Sherman 1. *See Albrecht v. The Herald,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968). To find a Sherman 1 violation, the questioned action is different from one emanating from independent action and, therefore, it has been established that something more than a simple unilateral termination is required before it is considered illegal. *Malley-Duff & Assoc. v. Crown Life Ins. Co.,* 734 F.2d 133 (3rd Cir), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 564, 83 L.Ed.2d 505 (1984). The additional ingredient is usually satisfied when an understanding or meeting of the minds among other similarily-situated or benefited parties is present, *Harold Friedman, Inc. v. Thorofore Markets, Inc.,* 587 F.2d 127, 142 (3rd Cir.1978).[5]

■ Plaintiff attacks defendant's 1982 nationwide reorganization as a conspiracy to eliminate independent agents from their insurance market. The court must look for the effect on competition which defendant's action may have had. Aetna's action constituted a vertical integration; whereby they eliminated their contractual relationship with independent agents, creating their own division to provide the same services. The "conspiracy," if any, had the net effect of resolving their commercial dealings with a vertically-localized, contractually-related person. The same did not affect their control or market power in the

---

3. Defendants aver that plaintiff's cause of action does not comply with Fed.R.Civ.P. 9(b) as to specificity of the claim. Plaintiff opposes alleging that all his facts are well pleaded. For purposes of our jurisdictional threshold inquiry, we examine the issue under the light shed by plaintiff's so insistently alleged "well-pleaded facts," taking them as true.

4. Defendant Aetna has alleged to be exempt from the antitrust laws as provided in the McCarran-Ferguson Act, 15 U.S.C. secs. 1011–

1015. Such allegation is without merit. It is firmly established that such exemption applies only to the business of insurance, to wit: The relations between insurer-insured. *See Group Life Health Insurance Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979); 15 U.S.C. sec. 1013(b).

5. A failure to conspire is not a conspiracy. *Morrison v. Murray Biscuit Co.,* 797 F.2d 1430, 1435 (7th Cir.1986).

relevant geographic market.[6] There being no cognizable antitrust claim, we now pass upon the sufficiency of the RICO allegations from the standpoint of federal jurisdiction.

## II.

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. secs. 1961–1968, recognizes a person's right to recover treble damages "by reason of a violation of" its provisions. *See* 18 U.S.C. sec. 1964(c).[7]

Plaintiff has instituted a cause of action under RICO by alleging a violation of 18 U.S.C. sec. 1962(c). Complaint, allegations No. 20 and 25, docket document No. 1. There, he alleges:

20. The promises, representations, and offers made by Aetna to induce plaintiff to enter into an employment contract were part of a fraudulent scheme which purpose was to terminate exclusive general agency agreements throughout the United States. The aforementioned scheme to defraud, perpetrated in part by use of the U.S. mails and interstate wire communications constituted operations of Aetna Corp. by defendants through a pattern of racketeering activity within the meaning of 18 U.S.C. sec. 1962(c).

. . . .

25. The representations made to the plaintiff and many other persons in his position had the purpose of depriving them of their overrides and the vested value of the variable general agency contracts.

These allegations are contested by defendants. Their argument is twofold. First, defendants claim that plaintiff has failed to plead with particularity the elements of his cause of action as required by Fed.R.Civ.P. 9(b). Second, defendants claim absence of a RICO claim on the merits of the cause of action, or that Odishelidze has failed to plead a *prima facie* valid claim.

Defendants do not question Odishelidze's standing to sue under RICO. He has suffered a direct injury in his business or property. 18 U.S.C. sec. 1962; *see Alexander Grant & Co. v. Tiffany Industries, Inc.,* 770 F.2d 717 (8th Cir.1985); *Warren v. Manufacturers Nat'l Bank of Detroit,* 759 F.2d 542 (6th Cir.1985). Plaintiff's burden is to prove that the defendant engages in a pattern of racketeering activity in a manner forbidden by the RICO provisions and that the racketeering activities injured the plaintiff in his business or property. 18 U.S.C. sec. 1964(c); *Sedima v. Imrex,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). In passing judgment, we must say that RICO was not designed to castigate sporadic activity. *Roeder v. Alpha Industries, Inc.,* 814 F.2d 22 (1st Cir.1987). The probing of a legitimate business under RICO normally requires more than one racketeering activity and the threat of continuing racketeering activity. It is this factor of continuity in the racketeering conduct which brings about actionable behavior. *Sedima, citing from* S.Rep. No. 91–617 at 158 (1969).

It is clear that a claim instituted under section 1962(c) must establish four elements: (a) conduct (b) of an enterprise [8], (c) through a pattern of (d) racketeering activity. *Sedima,* 105 S.Ct. at 3285 and n. 14. The mere allegation that a defendant is conducting an enterprise that affects interstate commerce is obviously not in itself a violation of section 1962 nor a mere commission of the predicate offenses. *Id.,* at

---

**6.** Aetna terminated their relationship with independent agents. This by no means established barriers of entry into the insurance market nor impede the agents to continue in their business of selling other insurance companies' policies. No antitrust violation can ensue under this pattern.

**7.** Section 1964 reads:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

**8.** 18 U.S.C. sec. 1961(4) defines enterprise to include any association, individual, partnership, corporation or other *legal* entity.

3281. The conduct which RICO is concerned with is defined under the concept of "racketeering activity" which clearly does not require a prior criminal conviction. *Sedima v. Imrex,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). As claimed here, a predicate act could be, for example, mail fraud. 18 U.S.C. sec. 1961(1); *Haroco v. American Nat'l B. & T. Co. of Chicago,* 747 F.2d 384 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Even though *Sedima* left open the issue of what would constitute a "pattern", it has been stated that when a person commits at least two acts with a common purpose of furthering a continuing criminal enterprise with which that person is associated, the elements of relatedness and continuity of concern as defined in *Sedima,* are satisfied. *United States v. Ianniello,* 808 F.2d 184 (2d Cir.1986). Predicate act(s) must be established as a threshold matter. If such predicate act(s) are absent, the case should be dismissed. *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1362 (11th Cir.1985).

Generally, allegations to the effect that a defendant benefited from racketeering activity, which "includes mail fraud and wire fraud," will be deemed insufficient to establish a commission of a predicate act. *See López v. Dean Witter Reynolds, Inc.,* 591 F.Supp. 581, 585 (N.D.Cal.1984); *Roeder,* 814 F.2d at 31.

In summary, we need to have a predicate act committed by an "enterprise," since a charge under section 1962(c) must allege a relationship between a person and an enterprise. *See Haroco v. American Nat. B & T. Co. of Chicago,* 747 F.2d at 398.

 Even if we accept that Aetna offered plaintiff a job to induce him to renounce to the exclusive agent contract and that this fact qualifies as a predicate act, we find that there is no allegation of a pattern or of an enterprise distinct from the imputed person.

There being no federal jurisdiction, we cannot entertain pendent state claims under Law 75, of June 24, 1964, 10 L.P.R.A. secs. 278(a)–278(d), and the Puerto Rico Insurance Code. In sum, we hereby DIS-MISS the instant complaint for failure to plead a cognizable claim under federal jurisdiction. This is without prejudice of Odishelidze filing another action in the proper local forum. We express no view regarding the merits of a potential state-court action.

IT IS SO ORDERED.