**Alexander ODISHELIDZE,**
**Plaintiff, Appellant,**

v.

**AETNA LIFE & CASUALTY CO., et al., Defendants, Appellees.**

**No. 87–1901.**

United States Court of Appeals, First Circuit.

Submitted July 11, 1988.

Decided Aug. 3, 1988.

Harry Anduze Montano, Santurce, P.R., on brief, for plaintiff, appellant.

David P. Freedman, Edgar Cartagena–Santiago, Jorge I. Peirats, and O'Neill & Borges, Hato Rey, P.R., on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, COFFIN and SELYA, Circuit Judges.

PER CURIAM.

Appellant, Alexander Odishelidze, commenced an action in the district court for the District of Puerto Rico on November 18, 1985. He asserted jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1332 (diversity). He alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c), the Sherman Antitrust Act, 15 U.S.C. § 1, and various state law claims. Odishelidze also asserted pendent jurisdiction regarding the state law claims. As defendants, Odishelidze named Aetna Life & Casualty Co., and its subsidiaries Aetna Variable Annuity Life Insurance Compana [sic] a.k.a. and/or d.b.a. Aetna Life Insurance and Annuity Company, Aetna Financial Services, Inc. and Aetna Life Insurance Company; in addition, he named as individual defendants William O. Bailey, Dean E. Wolcott, James R. Bailey, Thomas L. West and Stanley W. Thompson—all officers or employees of the above corporations.

## BACKGROUND

Odishelidze, a resident of Puerto Rico, was an exclusive general agent for Aetna in Puerto Rico from 1971 to 1976 and from 1978 until 1982. In 1981, as part of a reorganization of its operations, Aetna decided to close all of its general agencies throughout the country. As a result, Aetna, in 1982, terminated Odishelidze's general agency and offered him a position as the manager of a newly created office within Aetna—the Puerto Rico Personal Financial Security Division Marketing Office. In this position, Odishelidze was an employee of Aetna. In 1984, Aetna decided to close the Puerto Rico marketing office. According to Aetna, it offered Odishelidze a position in Florida, but Odishelidze turned it down and was discharged. However, Odishelidze alleges that his employment was terminated in 1984 after he unsuccessfully attempted to secure adequate conditions for his San Juan office.

Basically, Odishelidze claims that Aetna accomplished the termination of the general agencies by fraudulent misrepresentations and inducements concerning salary and other benefits he would receive as an employee. He alleges that defendants conspired to deprive him of his "vested interests, property and contractual rights" as an exclusive agent. *See* Complaint, ¶ 14. This "concerted activity" allegedly was in restraint of trade because general agents were frozen out or boycotted while Aetna gained more control of the market. Odishelidze also claimed that this same behavior violated RICO because the fraudulent representations were "racketeering activities" carried out through use of the wires and mail, *see* 18 U.S.C. § 1961(1)(B), and harmed him in his business. *See id.* § 1964(c).

On May 8, 1986, Aetna moved to dismiss the complaint for, among other reasons not relevant here, failure to state a claim upon which relief could be granted. *See* Fed.R. Civ.P. 12(b)(6). Aetna addressed both the state and federal claims in its Rule 12(b)(6) motion. On August 26, 1987, the district court dismissed the complaint. *Odishelidze v. Aetna Life & Casualty Co.*, 668 F.Supp. 94 (D.P.R. 1987). It found that Odishelidze had failed to state both a cognizable antitrust claim and an actionable civil RICO cause of action. It also found that diversity jurisdiction was lacking due to the averment in Odishelidze's complaint that "Aetna Life and Casualty Co. is a corporation organized and existing under the laws of the State of Connecticut, with its principal *place of business in Puerto Rico.*" 668 F.Supp. at 96 n. 2 (emphasis in

original).[1] The court, therefore, did not consider the merits of the state law claims, dismissing them for lack of pendent jurisdiction. *Id.* at 95, 99. It also ordered the complaint dismissed "for failure to plead a cognizable claim under federal jurisdiction" and noted that the dismissal was "without prejudice of Odishelidze filing another action in the proper *local forum.*" *Id.* at 99 (emphasis added).

On September 15, 1987, Odishelidze filed a motion for reconsideration and to vacate judgment. In addition to rearguing his antitrust and RICO claims, he argued that diversity jurisdiction did in fact exist. He stated that the information in paragraph 3 of his complaint that Aetna Life & Casualty Co. had its principal place of business in "Puerto Rico" was a typographical error and that the paragraph was meant to read that the principal place of business of Aetna Life & Casualty Co., as with all the other corporate defendants, was in *Connecticut*, thereby creating proper diversity jurisdiction. The court denied this motion, without opinion, on September 23, 1987. On September 23, Odishelidze filed a timely notice of appeal both from the original dismissal of his complaint and the denial of his motion for reconsideration.

## DISCUSSION

### 1. *The Federal Claims*

■ We affirm the dismissal of Odishelidze's antitrust and RICO claims. As for the antitrust claim, Odishelidze's failure to state a "contract, combination... or conspiracy" is obvious and fatal to his § 1 claim.[2] *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). *Copperweld* clearly rejected the intra-enterprise conspir-

acy doctrine. That is, for § 1 purposes, the activities of a corporation and its wholly owned subsidiaries are viewed as that of a single enterprise. *Id.* at 771, 104 S.Ct. at 2741–42. Because unilateral action is not prohibited by § 1 of the Sherman Act, *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984), the actions of a parent corporation, its subsidiaries or sister corporations, and its employees cannot be considered concerted action. *See VII* P. Areeda, *Antitrust Law* ¶¶ 1464(f), 1470 (1986) (*Copperweld* holding applies to sister corporations owned by a third entity and to officers or employees of those corporations, citing cases).

■ As for Odishelidze's RICO claim, it is clear that under § 1962(c)[3] the "person" alleged to be engaged in a racketeering activity (the defendant, that is) must be an entity distinct from the "enterprise;" under § 1962(c) the enterprise is not liable. *Schofield v. First Commodity Corp. of Boston*, 793 F.2d 28, 29–30 (1st Cir.1986). That is, the Aetna companies and their officers or employees (the named defendants) cannot be the entity that conducts its own affairs through a pattern of racketeering activity. *See id.* at 30. Throughout his brief and pleadings below, Odishelidze has continued to characterize the enterprise as Aetna and its subsidiaries and employees without specifically identifying a defendant, distinct from the enterprise, which conducted the enterprise's activities through a pattern of racketeering activity. For example, in paragraph 28 of his complaint, Odishelidze states:

> The defendant corporation and its named subsidiaries, its officers, directors, and employees, to wit: Aetna

---

**1.** All the subsidiaries were noted to be citizens of Connecticut. *See* Complaint, ¶¶ 3–6.

**2.** 15 U.S.C. § 1 provides in relevant part:
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony....

**3.** 18 U.S.C. § 1962(c) provides:
It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Life and Casualty Company; Aetna Variable Annuity Life Insurance Company; Aetna Financial Services, Inc.; Aetna Life Insurance Company; William O. Bailey; Dean E. Wolcott; James R. Bailey, Thomas L. West; Edward F. Dwight; Stanley W. Thompson and other [sic] agreed and entered as employees and agents of the defendant enterprise into a pattern of activities directed to defraud plaintiff...."

As the court in *Schofield* stated, " 'It is only a person, or one associated with an enterprise, not the enterprise itself, who can violate the provisions of the section.' " *Id.* at 30 (quoting *Van Schaick v. Church of Scientology of California*, 535 F.Supp. 1125, 1136 (D.Mass.1982)).

2. *Diversity Jurisdiction*

Fed.R.Civ.P. 8(a)(1) requires a complaint to set forth "a short and plain statement of the grounds upon which the court's jurisdiction depends...." Under this standard, Odishelidze's complaint technically is defective because it erroneously designates the principal place of business of Aetna Life & Casualty Co. as Puerto Rico instead of Connecticut.[4]  *See* 28 U.S.C. § 1332(c); *District of Columbia v. Transamerica Insurance Co.*, 797 F.2d 1041, 1043–44 (D.C. Cir.1986) (in a properly pleaded diversity action against a corporate defendant, plaintiff will advert to both factors set out in § 1332(c)—place of incorporation and principal place of business). Although Fed.R. Civ.P. 12(h)(3) states that "[w]henever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action," courts should heed the admonition of Fed.R.Civ.P. 15 to allow amendments "freely" if it appears possible that plaintiff can correct the jurisdictional defect. *See* 3 J. Moore, *Moore's Federal Practice* ¶ 15.10 (2d ed. 1985) (footnote omitted).

Indeed, amendment to show that diversity jurisdiction actually exists, although defectively pleaded, is specifically allowed by 28 U.S.C. § 1653 which provides that

"[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." *See Moore, supra,* ¶ 15.09, at 15–102. This statute is normally construed liberally so as to avoid dismissals of complaints on technical grounds. *Topp v. CompAir, Inc.*, 814 F.2d 830, 832 n. 2 (1st Cir.1987) (citation omitted). Thus, such technical defects in jurisdictional pleadings usually are not fatal. *Id.*

■ Even though a final judgment had already been entered dismissing Odishelidze's complaint, he is not barred from seeking to cure the defective jurisdictional allegations. *See Moore, supra,* ¶ 15.10. His motion for reconsideration and to vacate judgment was a timely motion under Fed.R.Civ.P. 60(b). Although not designated as such, and although no formal request to amend was included in his motion, we will treat Odishelidze as having requested the court to vacate its judgment to allow him to cure the jurisdictional defects in his original complaint.

"A motion for relief from a final judgment pursuant to Rule 60(b) is addressed to the discretion of the district court, *Dankese v. Defense Logistics Agency*, 693 F.2d 13, 15 (1st Cir.1982), may be granted only under exceptional circumstances, *Lepore v. Vidockler*, 792 F.2d 272, 274 (1st Cir.1986), and may be reviewed only for abuse of discretion, *Browder v. Illinois Department of Correction*, 434 U.S. [257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978)]...." *Rivera v. M/T Fossarina*, 840 F.2d 152, 156 (1st Cir.1988). In this situation, the Rule 60(b) motion must be considered in light of 28 U.S.C. § 1653. *Averbach v. Rival Manufacturing Co.*, 809 F.2d 1016, 1019 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 3187, 96 L.Ed.2d 675, —— U.S. ——, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987). Indeed, amendment should be permitted, rather than dismissal, whenever it appears that a basis for federal jurisdiction can be stated by plaintiff. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1214 (1969).

---

**4.** Although not raised by the district court, the complaint also is defective as to the subsidiaries because Odishelidze states only that they are "citizens" of Connecticut and does not say where they are incorporated. *See* 28 U.S.C. § 1332(c).

■ Odishelidze's motion for reconsideration and to vacate judgment includes the amendments necessary to correctly allege jurisdiction under § 1332(c). He states in the motion that all the corporate defendants were incorporated in the state of Connecticut and have their principal places of business there. Moreover, defendants do not contest the amended jurisdictional allegations and have never argued that diversity jurisdiction does not exist in this case. Because there unquestionably is diversity jurisdiction, we find that it was an abuse of discretion for the district court to deny Odishelidze's motion for reconsideration and to vacate judgment. *Cf.* Moore, *supra,* ¶ 15.10, at 15–104 n. 2 (abuse of discretion to deny leave to amend on granting dismissal when plaintiff could have stated a claim, and cases cited).

Indeed, we find that a formal amendment of the complaint is not necessary at this stage. *See Wright & Miller, supra,* § 1214 (when court can readily recognize existence of diversity jurisdiction, amendment of complaint not always required) (footnote omitted). We therefore vacate both the district court's order denying Odishelidze's motion to reconsider the diversity issue and the judgment dismissing the complaint for failure to plead diversity jurisdiction. We affirm, however, the court's refusal to reconsider and vacate its judgment of dismissal of the antitrust and RICO claims.[5] The case is remanded to the district court with instructions to treat the defective allegations of diversity jurisdiction as cured and to consider the remaining state law claims.

*So ordered.*

[5.] Because of the view we take of the antitrust claim, *see* text *supra,* we need not address the district court's intimation, 668 F.Supp. at 97 n. 4, concerning the scope of the "business of insurance" for McCarran–Ferguson Act purposes. We take no view of whether or not that term embraces matters germane to insurer-agent re-

lationships. *See Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 224–25 n. 32, 99 S.Ct. 1067, 1080 n. 32, 59 L.Ed.2d 261 (1979) (leaving question open); *Thompson v. New York Life Ins. Co.,* 644 F.2d 439, 443 (5th Cir.1981) (similar).