WILLARD S. LEVINGS, trustee, vs. FORBES & WALLACE, INC.

Middlesex.    September 7, 1979. — October 24, 1979.

Present: HALE, C.J., GRANT, & KASS, JJ.

Practice, Civil, Master's findings, Failure to make discovery. Consumer Protection Act, Businessman's claim, Unfair practice.

The findings of a master acting under an order of reference which directed the master not to report the evidence in a case which was later tried without a jury were no more than prima facie evidence of the matters found. [500-501]

Allegations in a complaint that the defendant failed to pay the plaintiff for labor and materials which it had requested the plaintiff to provide and that the defendant, from the time it first placed the order, had never intended to pay the plaintiff for such labor and materials stated a claim for relief under G. L. c. 93A, § 11. [501-504]

In an action under G. L. c. 93A, § 11, alleging that the defendant committed an unfair or deceptive act by ordering from the plaintiff labor and materials in connection with the repair of an air conditioning unit for which it did not intend to pay, there was sufficient evidence to warrant the judge's findings that the defendant intended to pay for the reasonable value of the work for which it was obligated to pay and that there existed a bona fide dispute about the scope of the manufacturer's warranty and that therefore there was no such misrepresentation by the defendant which would give rise to a c. 93A violation. [504]

Where the defendant in a relatively simple civil action caused inordinate delays in the proceedings and on at least six occasions the intervention of the court was required to secure the defendant's compliance with the discovery process, and where it appeared that the sanctions imposed on the defendant appeared to fall far short of the cost to the plaintiff of obtaining discovery, the case was remanded for modification of the orders made in response to the plaintiff's motions for sanctions. [505]

CIVIL ACTION commenced in the Superior Court on July 8, 1974.

The case was heard on a master's report by *Cratsley,* J., a District Court judge sitting under statutory authority.

*Donald N. Sweeney* for the plaintiff.

*William K. Danaher, Jr.,* for the defendant.

KASS, J. Although the underlying cause is a contract action for material sold and services delivered, the insertion in the complaint of a claim under G. L. c. 93A, § 11, requires consideration once again of the reach of that statutory provision to commercial disputes between business organizations.

First, however, we must meet a procedural issue. The complaint was filed on July 8, 1974. It alleged that the plaintiff (Trane), at the request of the defendant (Forbes), repaired a central air conditioning unit located in a department store in Springfield; that Forbes had refused to pay Trane's bill for labor and materials; and *that Forbes,* from the time it first placed the written order for the work, never intended to pay Trane for its labor and materials. It is the last allegation, that in effect Forbes duped Trane into working for it, on which the c. 93A claim rests.

Procedural skirmishes followed, largely involving efforts by Trane to obtain discovery, which Forbes resisted by leading Trane a merry chase. For this Forbes incurred mild sanctions. Mass.R.Civ.P. 37, 365 Mass. 797 (1974). On March 16, 1976, Trane moved for a speedy trial, and that motion was allowed. On July 22, 1976, however, the case was dispatched to a master on an order of reference which directed him not to report the evidence since Forbes had demanded a jury; i.e., the master was to make his report "facts not final." Not until March 11, 1977, just five days short of a full year after the motion for a speedy trial had been allowed, did the master file his report. Regrettably, this was characteristic of the long and dilatory course of the litigation. The master made findings favorable to Trane, including a finding that when Forbes issued its purchase order to Trane, "it intended not to pay the plaintiff for the work which the plaintiff was to per-

form pursuant to the purchase order." Forbes filed objections to the master's report, but made no effort to have those objections heard, nor does the record disclose what the objections were. Trane, for its part, never moved for adoption of the report. While the master's report remained in this limbo, Forbes yielded on the contract claim and agreed to pay Trane the full amount of its bill, plus interest.

Trane pressed the c. 93A complaint, which was tried in October of 1977, without a jury since, at that time, an action under c. 93A, § 11, was an equitable action.[1] It is the position of Trane that once the matter became jury waived, the status of the master's report became governed by Mass.R.Civ.P. 53(e)(2), as amended, 367 Mass. 917 (1975), under which the court shall accept the master's findings of fact unless clearly erroneous. If so regarded, the master's report served to equip Trane with the substantial advantage of the master's finding that Forbes hired Trane, never intending to pay for the latter's work. If the master's report is to be regarded as "facts not final," in accordance with the original order of reference, the status of the master's findings is no more than prima facie evidence of the matters found. Prior to the adoption of the Massachusetts Rules of Civil Procedure in 1974, the waiver of a jury trial did not alter the status of a master's (then an auditor's) report. *Ott* v. *Comeau*, 297 Mass. 108, 110 (1937). Under the present rules the view appears to be that "if the master has heard the case 'facts not final,' the principles governing a master's report in a jury case control." Smith & Zobel, Rules Practice §§ 53.11 and 53.12 (1977). So to regard the master's report is a particularly apt result in the instant case, where that report was never adopted and where the parties proceeded without express objection to a full trial (including the testimony

---

[1] Since the instant case was tried before the enactment of St. 1978, c. 478, § 48, we need not decide whether that statute altered the purely "equitable" character of c. 93A actions.

of witnesses and the admission in evidence of many exhibits) of the c. 93A issue.

We turn now to whether Trane's complaint stated a case within the scope of c. 93A. As originally enacted, c. 93A undertook to provide "a more equitable balance in the relationship of consumers[2] to persons conducting business activity." *Commonwealth* v. *DeCotis*, 366 Mass. 234, 238 (1974). See also *Tober Foreign Motors, Inc.* v. *Reiter Oldsmobile, Inc.,* 376 Mass. 313, 319 (1978); Alperin & Chase, Consumer Rights and Remedies § 123, n.25 (1979). Complaints brought by consumers had to filter through the Attorney General, who alone could bring enforcement actions. Passage of St. 1969, c. 690, inserted a private remedy provision in the statutory scheme. This appears as § 9. For a review of the history of these developments see *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 693-700 (1975).

The right to employ the potent weaponry of c. 93A (new substantive rights, multiple damages, counsel fees) was conferred upon businessmen,[3] as opposed to consumers, by St. 1972, c. 614, § 2, which inserted c. 93A, § 11, into the General Laws. It is the position of the defendant Forbes that, in a controversy between businesses, the unfair method of competition or unfair or deceptive act or practice of which the injured party complains must (a) have an anticompetitive effect and (b) involve a plaintiff who is a "consumer," i.e., is a vendee or lessee of goods, services or property. In the instant case, the plaintiff Trane was a purveyor of services, rather than a purchaser.

---

[2] The statute defined a consumer as "[a]ny person who purchases or leases goods, services or property, real or personal primarily for personal, family or household purposes . . . ." G. L. c. 93A, § 9(1), as amended through St. 1971, c. 241.

[3] "Any person who engages in the conduct of any trade or commerce . . . ." G. L. c. 93A, § 11, inserted by St. 1972, c. 614, § 2.

A statement issued by the House Committee on Banks and Banking, which reported favorably on the bill which became St. 1972, c. 614,[4] lends some support to the proposition that the target of § 11 is activity which is anticompetitive in purpose or effect. The focus of the House Committee's statement is exclusively on the consequences to consumers and the economy of unfair competition: businesses which could not survive unfair competition would close, allowing the survivors to set higher prices in a monopolistic environment, to the detriment of consumers. The language of § 11 suggests no such limitation, however; it speaks in terms of "an unfair method of competition *or* an unfair or deceptive act or practice" (emphasis supplied). The disjunctive nature of the wrongs categorized in § 11 comes into sharp relief in *PMP Associates, Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596-598 (1975), in which the court held that a refusal to sell advertising space did not, without more, constitute an unfair trade practice because it was "not within any recognized conception of unfairness, [was] neither immoral, unethical, oppressive nor unscrupulous." *Id.* at 596. Coupled with an anticompetitive motive or effect, the court observed, *id.* at 597 and citing numerous cases arising under the Trade Commission Act,[5] this otherwise innocent practice might well become unlawful under c. 93A. It follows by necessary implication that a business practice which did fall within a class of activity described as unfair or deceptive in *FTC* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972), and 29 Fed. Reg. 8325, 8355 (1964), would be proscribed by § 11 and, therefore, actionable without the additional anticompetitive trait. In *Frank J. Linhares Co.* v. *Reliance Ins. Co.*, 4 Mass. App. Ct. 617, 623 (1976), for example, we said that allegation of a refusal to deliver a truck to which the plaintiff had a right of possession unless the plaintiff should agree in writing to release

[4] 1972 House Doc. No. 3124.

[5] 15 U.S.C. § 45 (a) (1) (1976).

the defendant from warranties or repairs stated a good § 11 claim. The defendant's activity in that case had no anticompetitive overtones.

Forbes' argument that only buyers, not sellers, may avail themselves of remedies under § 11 finds no support in the statutory language or its history. Until recently, G. L. c. 93A, § 9(1), limited rights of action to persons who were purchasers and lessees while § 11, however, contained no such limitation; rather it conferred the businessman's 93A claim on "any person who engages in the conduct of any trade or commerce." The remedies and procedures in §§ 9 and 11 are related, but not parallel, and the conditions of one section should not be read by implication into the other. *Nader* v. *Citron*, 372 Mass. 96, 99-101 (1977). In any event, St. 1979, c. 406, § 1, enacted last July, eliminated the purchaser and lessee qualification from § 9(1). As that provision now reads, "Any person, other than a person entitled to bring action under section eleven . . . who has been injured by . . . any method, act or practice declared to be unlawful by section two" may bring an action under c. 93A. It does not, incidentally, require an exceptionally lively imagination to conjure circumstances under which an economically powerful business in the capacity of a buyer might act unfairly in relation to a small business in the capacity of a seller of goods or services.

It remains to ask whether, on the facts found, Forbes has committed a transgression which exposes it to a c. 93A claim, i.e., did it do anything unfair or deceptive? What is unfair is a definitional problem of long standing, which statutory draftsmen have prudently avoided. "It is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field." H. R. Conf. Rep. No. 1142, 63d Cong., 2d Sess. (1914). The criteria adopted in our decisions are those spelled out in *PMP Associates, Inc.* v. *Globe Newspaper Co.*, 366 Mass. at 596, and derive in large measure from the Federal Trade Commission Act, 15 U.S.C. § 45 (a) (1)

(1976), and regulations thereunder. Those criteria require us in a case such as this to look for conduct which is (1) within "at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) . . . is immoral, unethical, oppressive, or unscrupulous . . ." 29 Fed. Reg. 8325, 8355 (1964). Whether a given practice runs afoul of these touchstones must be determined from the circumstances of each case. *Don Lorenz, Inc.* v. *Northampton Natl. Bank,* 6 Mass. App. Ct. 933 (1978). The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce. Thus, to refuse to pay for goods or services because one disputed the amount of the bill does not give rise to a c. 93A action. That statute has not superseded the common law of contracts or the Uniform Commercial Code and "not every unlawful act is automatically an unfair (or deceptive) one under G. L. c. 93A." *Mechanics Natl. Bank* v. *Killeen,* 377 Mass. 100, 109 (1979). A misrepresentation in the common law sense would, however, be the basis for a c. 93A claim. If Forbes, therefore, ordered goods and services from Trane and thereby induced Trane to work for it, all the while never intending to pay for that labor and materials, Trane would have a c. 93A action against Forbes.

The trial judge found, however, that no such deceitful intent by Forbes had been established. Rather, he found that Forbes intended to pay Trane for the reasonable value of the work for which it was obligated to pay. The judge based his finding, among other things, on the fact that the purchase order contained no price and since Forbes offered to pay something more than half the amount of the bill, it might have paid a smaller bill without cavil. The judge also found there existed a bona fide dispute about the scope of the manufacturer's warranty concerning the air conditioning motor. On our review of the record we cannot say the judge was wrong. Accepting the facts found by the judge, there was no misrepresentation by Forbes, and its conduct cannot be said to have fallen to that level which gives rise to a c. 93A action.

Earlier in this opinion we commented on the long and dilatory course of this litigation. On no less than ten occasions in a relatively simple case the defendant caused delay in the proceedings. It answered late; it filed tardy and inadequate answers to interrogatories and only after a court order to do so; it declined to produce documents until on more than one occasion it was ordered to produce them; it moved to continue the master's hearings for a month, and then its lawyer failed to appear for the third session of those hearings (without prior notice to the plaintiff's counsel). A review of the docket discloses six occasions when the intervention of the court was required to secure compliance by the defendant with the discovery process.

Sanctions under Mass.R.Civ.P. 37, 365 Mass. 797 (1974), were imposed on the defendant in two instances: $415 in attorney's fees for failure to comply with an order to produce documents; $150 for failure to answer interrogatories fully. Trane has raised the adequacy of these sanctions on appeal. In isolation, each instance of delay and resistance must have seemed a routine aggravation, insufficient to call down judicial wrath. Collectively, even making due allowance for the plaintiff's procedural aggressiveness, the instances of the defendant's lack of conscientiousness in making discovery (and delaying the orderly progress of the litigation) represent abuse to which courts ought not to be subjected. *Partlow* v. *Hertz Corp.*, 370 Mass. 787, 790-791 (1976). See *National Hockey League* v. *Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976). Note, The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions, 91 Harv. L. Rev. 1033 (1978). On our view of the record, the sanctions imposed fell far short of the cost to the plaintiff of obtaining discovery. Compare *Henshaw* v. *Travellers Ins. Co.*, 377 Mass. 910 (1979). If in the past rule 37 has been seen as a "paper tiger,"[6] it is not too late to put some teeth in the tiger.

---

[6] Rosenberg, New Philosophy of Sanctions, appearing in New Federal Civil Discovery Rules Sourcebook 140, 141 (Treadwell ed. 1972).

Accordingly, the action is remanded to the Superior Court for review of the orders made in response to the plaintiff's several motions for sanctions, and the modification of those orders in a manner consistent with this opinion. The judgment is otherwise affirmed without costs.

*So ordered.*