**ATLANTIC SPORT BOAT SALES, INC., Plaintiff,**

v.

**CIGARETTE RACING TEAM, INC., Defendants.**

**Civ. A. No. 87–2003–C.**

United States District Court, D. Massachusetts.

Aug. 23, 1988.

Daniel C. Roache, Kramer & Krasker, Boston, Mass., for plaintiff.

Raymond J. Kenney, Jr., Martin, Magnuson, McCarthy & Kenney, Boston, Mass., Charles P. Reidy, and James T. Crowley, Thomas J. Collin, Thompson, Hine and Flory, Cleveland, Ohio, for defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

· This is an action for breach of contract and for violation of M.G.L.c. 93A § 11. The matter is now before the Court on the defendant's motion for summary judgment.

*Background*

The defendant, Cigarette Racing Team ("Cigarette"), manufactures high-performance powerboats. The plaintiff ("Atlantic") is a boat dealer located in Boston, Massachusetts. On December 16, 1985, the president of Atlantic, Avery Issner executed a contract (the "Agreement") with Cigarette to act as Cigarette's exclusive dealer in Massachusetts. The contract was to terminate automatically on March 16, 1986, at which time Cigarette could, at its discretion, extend the Agreement for an additional nine months.

Under the Agreement, Atlantic was required to maintain a minimum inventory of three boats. Accordingly, Atlantic deposited $45,000 on December 16, 1985, to be applied to the purchase of a 35 foot boat. Atlantic made two other deposits, on February 21 and 26, 1986, for the purchase of two 21 foot boats. Cigarette delivered the 35 foot boat to Atlantic in February, 1986, while the 21 foot boats were delivered on July 14, 1986 and August 4, 1986. Atlantic did not order any other boats. On August 14, 1986, Cigarette notified Atlantic that the dealership contract had expired on March 16, 1986, and that Cigarette had not extended the term of the Agreement. Just prior to this, Cigarette entered into an exclusive dealership agreement with another boat dealer in Massachusetts.

Atlantic then brought this suit, alleging that by terminating the agreement on August 14, Cigarette had breached the Agreement. In Count II of its complaint, Atlantic alleged that the defendant's actions constituted unfair and deceptive practices, in violation of M.G.L.c. 93A.

*Discussion*

■ In its motion for summary judgment, the defendant makes a number of arguments. The first argument is that it did not breach the Agreement since the

Agreement had expired on March 16, 1986. The dealership Agreement provides that its terms could not be changed, waived, varied or modified except by a written statement signed by both parties. Since an extension of the Agreement after March 16 would be an amendment, the defendant argues, it must be in writing. There was no writing extending the Agreement, so it could not have been extended, the defendant contends. The plaintiff argues that the Agreement could be, and was, extended as a result of the defendant's actions.

Under Florida law,[1] a contract may be modified by oral agreement despite a clause requiring all modifications. to be in writing. *Professional Insurance Corp. v. Cahill*, 90 So.2d 916, 918 (Fla.1956); *Linear Corp. v. Standard Hardware*, 423 So.2d 966, 968 (Fla.Dist.Ct.App.1982). A contract may also be modified by a course of dealing or other conduct of the parties which evidences an agreement to modify the contract. *Linear Corp.*, 423 So.2d at 968; *Pan American Engineering Co., Inc. v. Poncho's Construction Co.*, 387 So.2d 1052, 1053 (Fla.Dist.Ct.App.1980).

Here, after the date on which the defendant claims the contract terminated, the defendant sent the plaintiff several memoranda addressed to "All Cigarette Dealers". The defendant referred at least one potential customer to the plaintiffs after March 16. The defendant also accepted the plaintiff's order for the two 21 foot boats after March 16, despite the clause which provides that the expiration of the Agreement shall act as an automatic cancellation of all purchase orders. Finally, the defendant did not notify the plaintiff that the Agreement had expired until almost five months after the supposed expiration date. Based on these facts, a jury could find that the parties had modified the Agreement to extend it until December 16, 1986.

■ The defendant next urges that Atlantic may not recover any damages. It bases this argument on paragraph 15(c) of the Agreement. That paragraph provides:

> [Cigarette] shall not be liable to [Atlantic], or to any other party, by virtue of the expiration or termination of this Agreement for any reason whatsoever, including, but not limited to, any claim for loss of profits or prospective profits for anticipated sales of [Cigarette's] products, or on account of any expenditures, investments, leases, capital improvement or any other commitments made by [Atlantic] in connection with its business made in reliance upon or by virtue of this Agreement or otherwise.

The defendant argues that, even if it did breach the Agreement by terminating it, this paragraph precluded recovery of damages regardless of the reason for termination. The plaintiff contends that this clause applies only in the event of expiration or termination. Since the plaintiff is seeking damages resulting from a breach of the contract, rather than from expiration or termination, it argues, paragraph 15(c) is inapposite. In essence, the plaintiff is arguing that the liability waiver applies only when Cigarette terminates the Agreement lawfully.

The Agreement itself is not a model of consistency, and the plaintiff's construction appears to be a reasonable one. Immediately preceeding paragraph 15(c), the Agreement states under what conditions Cigarette may terminate the Agreement.[2] The fact that these provisions are placed in the same section as the liability waiver implies that the clauses are to be read in conjunction with one another. Moreover, if the liability waiver were construed to apply to unlawful, as well as lawful, terminations, it would be unnecessary to specify when Cigarette could terminate the Agreement. Under such a construction, the liability waiver clause would essentially allow Cigarette to terminate the Agreement at will without fear of liability. In that case, the provisions allowing Cigarette to termi-

---

1. The Agreement provides that Florida law shall govern application and interpretation of the contract.

2. Paragraph 15(a) provides that Cigarette may terminate the Agreement if Atlantic fails to pay a purchase order, if Atlantic commits a material breach of the Agreement, or if Atlantic becomes bankrupt.

nate the Agreement would be redundant. One must assume, however, that all parts of the contract are to have meaning. E. Farnsworth, Contracts § 7.11 (1982); 4 S. Williston, Contracts § 601 (3d ed. 1962).

On the other side of the coin, the defendant's interpretation is also reasonable. In *Stanley A. Klopp, Inc. v. John Deere Co.,* 510 F.Supp. 807 (E.D.Pa.1981), *aff'd* 676 F.2d 688 (3d Cir.1982), the court took the position advocated by Cigarette when faced with a similar waiver of liability. The court reasoned that if the liability waiver were construed to apply only to lawful terminations, the waiver would be meaningless since there is no liability if the termination is lawful. Certainly this reasoning could be applied here. Under Florida law, when a contract is ambiguous, as this Agreement is, the correct construction of the contract is a question of fact properly left to the jury. *Fabrica Italiana Lavorazione Materie Organiche. S.A.S. v. Kaiser Aluminum & Chemical Corp.,* 684 F.2d 776, 780 (11th Cir.1982); *Industries, Investments & Agencies (Bahamas) Ltd. v. Panelfab International Corp.,* 529 F.2d 1203, 1211 (5th Cir.1976). Since the plaintiff is entitled to all reasonable factual inferences, I must assume for the purposes of this motion that the waiver of liability does not apply to unlawful terminations. Therefore, the Agreement does not, as a matter of law, prevent the plaintiff from recovering damages for breach of contract.

■ Even if the waiver clause does not apply, the defendant contends, the plaintiff is not entitled to recover the damages alleged. The defendant argues that the expenses incurred by Atlantic were necessary for carrying out its obligations under the Agreement. The defendant contends that the alleged breach by Cigarette did not render Atlantic's expenses futile. Therefore, Cigarette is not liable for these expenses. The defendant's analysis of damages, however, is incorrect.

Under Florida law, when the defendant has totally breached the contract, the plaintiff has the choice of recovering either lost profits or damages that will put it in the same position it was in prior to making the contract. *McCray v. Murray,* 423 So.2d 559, 561 (Fla.Dist.Ct.App.1982); *Woroner Productions, Inc. v. Tourist Development Authority,* 256 So.2d 38 (Fla.Dist.Ct.App. 1972) *cert. denied* 261 So.2d 843 (Fla.1972); *Sundie v. Lindsay,* 166 So.2d 152, 153 (Fla. Dist.Ct.App.1964); *Plantation Key Developers v. Colonial Mortgage Co. of Indiana,* 589 F.2d 164, 169 (5th Cir.1979). If the plaintiff chooses the latter, it may recover all damages that were reasonably foreseeable or contemplated by the parties as a result of the breach. *Plantation Key Developers,* 589 F.2d at 169. This rule accords with the Restatement (Second) of Contracts, § 351. That section provides that damages are not recoverable for losses that the party in breach did not have reason to foresee as the probable result of the breach when the contract was made. *See generally* E. Farnsworth, Contracts § 12.16 (1982). If the plaintiff seeks lost profits, on the other hand, it must be able to prove the amount of lost profits with reasonable certainty. *Woroner Productions,* 256 So.2d at 38. Since businesses with little or no operating history generally cannot provide a basis for proving lost profits, they are often unable to recover such damages. *Murciano v. Urroz,* 455 So.2d 463, 464 (Fla.Dist.Ct.App.1984).

In this case, the plaintiff does not, and cannot, seek lost profits since it was a new venture with no history of past profits. Instead, the plaintiff seeks to recover for a number of expenditures incurred in the course of its dealership. More specifically, the plaintiff incurred $189,993.60 in the course of attempting to sell Cigarette boats.[3] The plaintiff received $116,500 from the sale of the three boats, yielding a net loss of $73,493.60. The general question is whether this loss was reasonably foreseeable as a probable result of the defendant's breach of the Agreement. One cannot say as a matter of law that the

---

**3.** This total amount can be broken down into the following general categories of expenditures: (1) boats and equipment; (2) promotional expenses; (3) expenses relating to the showroom; (4) travel expenses; (5) miscellaneous operating expenses.

plaintiff's losses were not reasonably foreseeable by the defendant as a probable result of the breach. A jury could find the defendant liable for these losses if the plaintiff establishes (1) the defendant should have foreseen that the plaintiff would incur these expenses; (2) the defendant should have foreseen that the plaintiff would not be able to sell the three boats at a high enough price to recover its expenses; and (3) this failure was the probable result of the defendant's breach. Since the issue of foreseeability is a material issue of fact, summary judgment is inappropriate on the issue of damages.

The defendant makes a passing argument that, since the expenses incurred by Atlantic were paid by the Issners personally rather than by Atlantic, Atlantic has not been damaged by the alleged breach. This argument, however, is not in accord with the facts. The money used to pay Atlantic's expenses was put up by Eric Issner, Avery Issner, and Dorothy Issner. This money was apparently a contribution to the capital of Atlantic. Thus, the Issners did not pay the expenses incurred by Atlantic. Rather, they contributed to the corporation's capital, which was used to pay Atlantic's expenses. Alternatively, the amounts paid by the Issners could be viewed as a loan to the corporation. In that case, Atlantic has still incurred debts in the course of its business. Therefore, Atlantic may properly seek to recover the expenses incurred in the course of the dealership.

■ Finally, the defendant argues that the plaintiff's allegations do not support a claim under M.G.L. c. 93A. Chapter 93A prohibits "unfair or deceptive acts and practices." M.G.L. c. 93A § 2. While the statute avoids defining what constitutes an unfair or deceptive act, it directs the court to look to Federal Trade Commission (the FTC) regulations under the Federal Trade Commission Act and to interpretations of that act by federal courts. M.G.L. c. 93A § 2. The FTC's general criteria for determining whether an act is unfair or deceptive is whether the act is within "at least the penumbra of some common-law, statutory or other established concept of unfairness, [or] is immoral, unethical, oppressive, or unscrupulous...." 29 Fed.Reg. 8325, 8355 (1964). "The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Levings v. Forbes & Wallace, Inc.*, 8 Mass.App.Ct. 498, 504, 396 N.E.2d 149 (1979). Allegations that the defendant merely violated the terms of a commercial agreement do not support a Chapter 93A claim. *Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. 85, 100–101, 390 N.E.2d 243 (1979). Chapter 93A has not superseded the common law of contracts. *Levings*, 8 Mass.App.Ct. at 504, 396 N.E.2d 149.

In *Levings*, the plaintiff alleged that the defendant hired the plaintiff to repair an air conditioning unit, that the defendant never paid for the plaintiff's work, and that the defendant never intended to pay for the work. The plaintiff brought a contract claim and a Chapter 93A claim. The defendant argued that the complaint did not state a 93A claim. The court noted that if the defendant ordered services from the plaintiff and thereby induced the plaintiff to do the work, all the while never intending to pay for it, the plaintiff would state a 93A claim. *Id.* The trial court had found, however, that the defendant had intended to pay for the reasonable value of the work. Therefore, there was no misrepresentation and, accordingly, no Chapter 93A violation. *Id.*

In this case, Atlantic has stated sufficient facts to allow a fact-finder to infer that the defendant misrepresented its intentions, thus violating Chapter 93A. At the time the Agreement was allegedly extended, the plaintiff had two boat orders outstanding. The Agreement provided, however, that the expiration or termination of the Agreement would automatically cancel all purchase orders, whether or not they had been accepted. Despite this clause, the defendant delivered the boats. Five months later, the defendant itself claimed that the contract had expired prior to the delivery of the boats. From these facts, one could infer that the defendant intended to induce the plaintiff to rely on the Agree-

ment while never intending to extend it.[4] Since the question of the defendant's intent at the time the Agreement was allegedly terminated is a material issue of fact, the defendant's motion for summary judgment on the 93A claim must be denied.

Order accordingly.

---

**4.** The defendant contends that, because the plaintiff failed to state in his demand letter that filling of the orders amounted to a 93A violation, the plaintiff is precluded from relying on those grounds now. This argument incorrectly assumes, however, that a demand letter was a prerequisite for bringing a Chapter 93A claim.

This suit was brought under § 11 rather than § 9. While § 9 suits require that a demand letter be sent prior to filing the suit, § 11 suits have no such requirement. *Nader v. Citron,* 372 Mass. 96, 101, 360 N.E.2d 870 (1977). It follows that the plaintiff in a § 11 suit is not limited by his demand letter.