LoConto, J.
The plaintiff, Roberta Dowd, brought an action against her insurer, United States Fidelity And Guaranty Company, Inc. in the Palmer District Court, seeking recovery on theories of breach of contract and/or liability under G.L.c. 93A and G.L.c. 176D. The defendant aggrieved of the findings and rulings of the trial judge who found for the plaintiff on the 93A count, brought this appeal. We rule that the trial judge did not commit prejudicial error that injuriously affected the substantial rights of the parties, and dismiss the report.
The facts necessary for an understanding of the issues are as follows. On or about April 2, 1990, Roberta Dowd purchased a motor vehicle insurance policy from the defendant, including coverage for property damage to her vehicle. Although she believed she was agreeing to inspect her vehicle in accordance with the Emission Inspection Law, the plaintiff signed an “Acknowledgement of *15 Requirement for Pre-Insurance Inspection,” which required that she have her motor vehicle inspected for damages on or before April 9, 1990. That inspection did not take place by April 9, 1990. The plaintiff made an installment payment toward the premium on April 2, 1990. The plaintiff was periodically billed by the defendant seeking payments for the coverage, including physical damage coverage. These bills requested payments in installments or in a lump sum. The plaintiff made another partial payment toward the premium on August 9,1990.
On August 3, 1990, the plaintiff damaged her motor vehicle when she backed into two other motor vehicles. The total repair price to the vehicle after the accident was $3,717.19. On August 7,1990, she made a claim on the defendant for the loss she suffered. On September 20, 1990, the defendant notified the plaintiff for the first time that it denied the plaintiff’s claim because she failed to comply with the pre-insurance inspection. On October, 1990, the defendant issued a credit endorsement reflecting an adjustment in the premium due in the amount of $277.00 on account of the suspension of collision coverage effective April 9,1990. Notwithstanding, the plaintiff was in arrears of premium payments.
The trial judge ruled that the defendant was unfair and deceptive within the meaning of G.Lc. 93A and the plaintiff is entitled to double damages and attorney’s fees. The defendant claims to be aggrieved by the trial court’s denial of directed findings at the close of the plaintiff’s case and at the close of all the evidence and the courts denial of numerous defendant requests for rulings of law. In addition, the defendant claims as error the award of double damages and attorney’s fees.
Effective January 1,1989, with exceptions not found here, a motor vehicle liability policy shall not provide fire and theft coverage or comprehensive coverage, so-called, or collision or limited collision coverage for a private passenger motor vehicle prior to an inspection of that motor vehicle by the insurer. G.L.c. 175, §113s. The statute required the Commissioner of Insurance to promulgate regulations affecting the time, manner and place for said inspections and the circumstances by which said inspections may be waived. The implementing regulations entitled, “Mandatory Pre-Insurance Inspection of Private Passenger Motor Vehicles,” are found in 211 C.M.R. s.94.01-94.16 (600 Mass. Register 45; January 20,1989).
Although 211 C.M.R. 94.04 required that no motor vehicle liability policy for physical damage coverage could be issued unless the motor vehicle had been inspected in accordance with the regulation, section 94.07 permitted a deferral of said inspection for seven calendar days following the effective date of coverage. In such a case, the regulations required the applicant to sign acknowledgement (FORM D) of the necessity to obtain an inspection and required that the insurer provide a list of inspection sites. FORM D provided in relevant part as follows:
By my signature below I certify that I have been informed that my vehicle [] which is ... being insured for Fire and Theft/Comprehensive and/or Collision or Limited Collision Coverage must be inspected by a representative of the insurer. This inspection must be completed within seven (7) calendar days (not including legal holidays) after the effective date of coverage, and in no event later than the date shown above [April 9,1990] to avoid a suspension in coverage.
I understand that failure to submit to the required inspection [] will result in the suspension (losses will not be covered) of the physical damage coverage (Fire and Theft/Comprehensive, Collision, Limited Collision) as of 12:01 AM. of the day following the date by which the inspection must be completed, as shown above.
I understand that if coverage is suspended it will be restored only after the inspection has been completed and the adjusted premium due for such coverage [] has been paid.
*16 In addition, the standard automobile policy (5th ed.) issued in this case provided coverage for any direct and accidental damage to the van caused by collision minus $500.00 deductible. Under the “General Provisions and Exclusions” portion of the policy included the following:
Pre-Insurance Inspection
Massachusetts law requires that we inspect certain motor vehicles before providing coverage for Collision, Limited Collision, or Comprehensive (Parts 7, 8, or 9). In some cases, we may defer the required inspection of your auto for seven calendar days (not including legal holidays) following the effective date of coverage. If you do not have your auto inspected within the time allowed, coverage for that auto will be automatically suspended. Your premium will be adjusted if the suspension lasts for more than ten days.
The regulations further provide that if the inspection is not conducted prior to the expiration of the seven calendar days, physical damage coverage shall be suspended at 12:01 A.M. on the eighth day and such suspension shall continue until the inspection is effected.
Whenever physical damage coverage is suspended, the insurer is required, between the 21st and 30th calendar day after the effective date of coverage, mail to the applicant the producer of record and any lien-holder a prescribed NOTICE OF SUSPENSION OF PHYSICAL DAMAGE COVERAGE (FORM C). 211 C.M.R. 94.09 (2).
This subsection also requires the insurer to make a pro rata premium adjustment (return premium or credit) by mail, not later than 45 days after the effective date of the suspension, whenever there is a suspension of physical damage coverage for more than 10 days.
By subsection (3), “[a]n insurer’s failure, however, to comply with the provisions of 211 C.M.R. 94.09 (2) does not restore physical damage coverage, but shall subject the insurer to a penalty pursuant to 211 C.M.R. 94.12.” 211 C.M.R. 94.09 (3). That penalty section provides that in addition to subjecting the insurer to fines, a violation of any provision of this regulation by an insurer shall be considered an unfair and deceptive act or practice in violation of G.L.c. 176D, including any remedy provided under G.L.c. 93A 211 C.M.R. 94.12(1) and (4).
The Commissioner of Insurance sent to all automobile insurance carriers doing business in Massachusetts a memorandum dated November 1,1989, and effective for all policies written after December 31, 1989, in which he commented on 211 C.M.R. s.s. 94.00 et seq., in part as follows:
Section 94.09 (2) of the regulation requires an insurance company to mail to its insured (whose coverage has been suspended due to the insured’s failure to have the automobile pre-inspected), a Form C (“Notice of Suspension of Physical Damage Coverage”). The Form C must be mailed to the insured, the producer of record and any lienholder between the 21st and 30th calendar day after the effective date of coverage. Failure to timely mail the Form C does not restore physical damage coverage. The Form C serves as a reminder to the insured that his or her physical damage coverages were automatically suspended as of the eighth (8th) day. The Form C may also be the first notice to the lien-holder than an inspection has not been completed, unless the lienholder requires such notice from the borrower (or other party).
In order to recover damages under section 9 of chapter 93A, a private litigant must demonstrate that he has been injured and must prove that there exist a *17 causal connection between the insurer’s unfair and deceptive act or practice and the injury for which recovery is sought. Wallace v. American Manufacturers Mutual Insurance Company, 22 Mass. App. Ct. 938 (1986). Although the legislature did not create separate standards for private and business claimants, our courts have judged private plaintiffs under a protective standard which follows traditional FTC case law, Slaneyv. Westwood Auto. Inc. 366 Mass. 688 (1975), and business plaintiffs to a standard that tolerates the “rough and tumble” of the commercial world. Levings v. Forbes & Wallance, Inc., 8 Mass. App. Ct. 498 (1979).
In this case the plaintiff is not attempting to enforce relief based upon a contractual obligation of the defendant. Rather she seeks recovery as a direct and proximate result of the defendant’s unfair and deceptive act or practice within the meaning of chapter 93A Although there was no direct evidence that the plaintiff would have inspected her vehicle had she received Form C, the judge could reasonably make a finding that the defendant’s failure to comply with the notice requirement was the proximate cause of the continued suspension of the physical damage coverage for the plaintiff’s vehicle.
The trial judge’s general and special findings are to stand if warranted upon any possible view of the evidence, Chase vs. John Hancock Mutual Life Insurance Company (1959) and will not be reversed unless plainly wrong. Michalopoulos v. Thompson (1957) 14 Mass. App. Dec 1. The undisputed facts indicate that the plaintiff was in arrears of her periodic premium payments, and the defendant continually billed her for premiums, including property damage coverage. In addition to the failure to mail Form C between the 21st and 30th calendar day, the defendant failed to make a pro rata premium adjustment within 45 days after the effective date of the suspension. By the Commissioner’s own memorandum, Form C is to serve as a reminder to the insured that physical damage coverage is suspended. For the above reasons, the loss complained of was a foreseeable consequence of the defendant's unfair and deceptive act or practice. DiMarzo v. American Mutual Insurance Company389 Mass. 85 (1983).
Punitive Damages and Attorneys’ Fees
In accordance with c. 93A, §9, a plaintiff can recover up to three, but not less than two, times the actual damages or $25.00 whichever is greater, if the court finds that the use or employment of the unfair or deceptive act or practice was a wilful or knowing violation of Section 2, or if the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated Section 2. This latter ground is intended “to promote prelitigation settlements by making it unprofitable for the defendant either to ignore the plaintiff’s request for relief or to bargain with the plaintiff with respect to such relief in bad faith.” Heller v. Silverbranch Construction Corporation, 376 Mass. 621 (1978). The evidence permitted the trial judge’s finding that the defendant did not give a reasonable response to the plaintiff after receipt of a notice of claim pursuant to G.L.c. 93A
Where the trial judge found that the defendant engaged in a deceptive act or practice in violation of G.L.c. 93A, §2, he was entitled to award attorney’s fees to the plaintiff in accordance with section 9. The actual amount to be awarded lies in the discretion of the trial court. The relevant factors that should be considered are: “the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.” Linthicum v. Archambault, 379 Mass. 381 (1979). We have reviewed the record in this case and rule that an assessment of $2,500.00 was not an abuse of discretion.
Petition dismissed