O’Toole, J.
The plaintiff C&W Industries, Inc. (“C&W”) brought this action against the defendant Sentry Insurance A Mutual Company (“Sentry”) to recover under an insurance policy and for alleged violation of G.L. c. 93A (Counts I and II, respectively). Sentry denies that the loss suffered by C&W is covered under the insurance policy and further says that its denial of C&Ws claim, even .if erroneous, did not *307 violate G.L. c. 93A. Sentry has moved for summary judgment in its favor under both counts of the complaint. C&W has moved for partial summary judgment as to liability under Count I only. For the following reasons, C&Ws motion as to liability on Count I is allowed and Sentry’s motion on Count I is correspondingly denied. Sentry’s motion as to Count II is allowed.
BACKGROUND
The undisputed material facts as established by the affidavits are as follows. C&W is in the business of re-manufacturing automotive disc brake calipers. From 1983 until February, 1992, C&W had been located at 399 Ferry Street in Everett (the “Everett premises”). After moving its place of business to 36 Charles Street, Malden, (the “Maldenpremises”), C&W continued to maintain its Everett premises for storage.
Sentry first issued a commercial insurance policy to C&W in 1988 when the company was located exclusively in Everett. C&W renewed the policy annually with revisions.
On March 8, 1993, a fire occurred at C&Ws Malden premises. After the fire, C&W promptly notified Sentry of the loss. Sentry disclaimed coverage on March 25, 1993.
Count I: Breach of Contract
What is at issue here is the proper interpretation of the policy in effect for the period from January 1, 1993 to January 1, 1994. Specifically, the question is whether the policy covers losses to “Business Personal Property” located at the Malden premises. As is not unusual, the policy consists of a Declarations section and various “endorsements,” each described in the Declarations by reference to an identifying number. The task lies in construing the various separate provisions harmoniously.
It is clear that the policy does cover C&Ws “Business Personal Property” located at its Everett facility, the “premises” listed in the policy. The Declarations show an insurance limit of $21,000 for that coverage. The Declaration also provide a “limit of insurance” of $500,000 for “covered property that is not at premises listed in the description of premises,” but rather “at Any Location.”
The endorsement providing insurance for “Business Personal Property” (Endorsement CP 00 10 10 90), applicable to the Everett premises, reads as follows:
A. Coverage. We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss. [Emphasis supplied.]
However, another applicable endorsement, titled “Metal Workers Broadened Property Coverage” (Endorsement CP 80 07 09 91), amended that language so that instead it provides:
A. Coverage. We will pay for direct physical loss of or damage to Covered Property anywhere in the Covered Territory caused by or resulting from any Covered Cause of Loss. [Emphasis supplied.]
“Covered Property” is defined in Endorsement 00 10 10 90 to include:
Your Business Personal Property located in or on the building described in the Declarations or within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property— Separation of Coverage form:
(1) Furniture and fixtures;
(2) Machinery and equipment;
(3) Stock;
(4) All other personal property owned by you and used in your business . . . [Emphasis supplied.]
The “Metal Workers Broadened Property Coverage” endorsement does not amend this definition of “Covered Property.”
The “Business Personal Property” endorsement also permits some “extensions” of coverage; one is for “Newly Acquired or Constructed Property.” (CP 00 10 10 90, Section A.5.a.) As described in that endorsement, without amendment, the insured could extend the insurance provided to buildings that might be acquired at locations “other than the described premises.” Thus, in this case, the described premises were in Everett; the Malden premises would qualify as “newly acquired.” In its unamended version, this extension applied not only to newly acquired buildings, but also to personal property located there. Both extensions, however, were limited to a period of thirty days following the acquisition of the new property. See Endorsement CP 00 10 10 90, Section A.5.a.
The “Metal Workers Broadened Property Coverage” endorsement changes this language in three ways. First, it changes the amount of insurance available for a loss to a newly acquired building, a provision not germane here. Second, it deletes entirely the language permitting extension of insurance to cover business personal property at a newly acquired location. The deletion is accompanied by a note that “Business Personal Property at newly acquired premises is included in the coverage for property at premises not listed in the policy.” Finally, the Metal Workers endorsement changes the governing time limit from thirty to ninety days after acquisition of the new premises.
The second of these changes is significant because it supports the idea that the policy provides coverage for business personal property without the need for a specific “extension.” This suggestion is consistent with (i) the amendment to the “Coverage” preamble in the Business Personal Property endorsement to make the coverage applicable “anywhere in the Covered Terri *308 tory” and (ii) the language in the Declarations setting a limit of $500,000 for “covered property that is not at premises listed in the description of premises.” When these provisions are considered with the advisory note in Section F. 1 .b. of Part I of the Metal Workers endorsement, the implication is strong that the policy does cover business personal property at the Malden location to a limit of $500,000, as C&W contends.
Even this construction is not without its difficulty, however, because the clauses from the Declarations and from the amended “Coverage” section of CP 00 10 10 90 both refer to “covered property,” which is a term defined to mean property at the listed premises. Sentry insists that property at the Malden location is not “covered property” under this definition, so that no additional coverage is created. The problem with this interpretation is that it leads to the conclusion that the clauses in the Declarations and the preamble to the Business Personal Property endorsement are utterly meaningless. If “covered property” is by definition only located at the premises listed, then there cannot be any covered property “that is not at premises listed” as the Declarations clause provides.
The only way out of this conundrum is to ignore one or the other of the horns of the dilemma. Sentry argues that the solution is to pay attention to the “covered property” term and to ignore the balance of the clauses. C&W argues, on the other hand, that the definition of “covered property” should be ignored for the purposes of the clauses, and the general, sensible meaning of the rest of the language should be given effect.
In these circumstances, an ambiguity exists, because the language in the policy permits alternate rational interpretations. MacArthur v. Massachusetts Hospital Service, Inc., 343 Mass. 670, 672 (1962). The longstanding rule is that when there is an ambiguity in the policy language, “every doubt is to be resolved against the insurer and in favor of the insured.” Koshland v. Columbia Insurance Co., 237 Mass. 467, 471 (1921); Woogmaster v. Liverpool & London & Globe Insurance Co. Ltd., 312 Mass. 479, 481 (1942); August A. Busch & Co. of Mass., Inc. v. Liberty Mutual Insurance Co., 339 Mass. 239, 243 (1959). This is so not only because the insurer typically has control over the language used and therefore appropriately bears any adverse consequences resulting from unclear provisions, but also because the aim should be to give effect to the main objective of insurance policies, that is, indemnification against casualty losses. Koshland v. Columbia Insurance Co., supra, at 471-72.
Applying this rule of construction, C&Ws interests prevail, and the clause in the Declarations must be considered to provide coverage for business personal property not at Everett, but at any location, up to a limit of $500,000.
Sentry’s position must also be rejected on another key point. The ninety-day limitation contained in the “Coverage Extensions” provided in Section A.5.a(3) of the Business Personal Property endorsement (CP 00 10 10 90), as amended by the Metal Workers endorsement (CP 80 07 09 91), does not apply. As amended, Section A.5.a. contains no provision for business personal property away from the listed premises, and the time limit in Section A.5.a(3) applies only to the extension for newly acquired property set forth in that Section. Rather, as discussed above, the coverage at issue arises out the construction (favorable to C&W) of the ambiguous language of the Declarations, supported by the “Coverage” preamble and the language of the Metal Workers endorsement.
Count II: G.L. c. 93A
Sentry is entitled to summary judgment on C&Ws claim that the defendant violated G.L. c. 93Aby grossly misinterpreting the Policy and failing to acknowledge coverage and make payment. The applicable standard under G.L. c. 93A for deciding whether Sentry’s conduct was unfair or deceptive is whether “the objectionable conduct . . . attain(s) a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). Even though Sentry did misinterpret the Policy and wrongly failed to acknowledge coverage, these actions fell short of what is necessary to make out a business-to-business violation of Chapter 93A.
The undisputed facts about the parties show that each of them is engaged in the conduct of trade or commerce so as to be subject to the provisions of G.L. c. 93A, 111.[1] Consequently, C&W must, when bringing a Chapter 93A claim, bring such claim under §11. International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 852 (1983). Under this section, the kind of activity constituting an unfair or deceptive act or practice is one which either falls “within at least the penumbra of some common-law, statutory, or other established concept of unfáirness” or “. . .is immoral, unethical, oppressive, or unscrupulous . . .” Levings, 8 Mass.App.Ct. at 504, citing 29 Fed. Reg. 8325, 8355 (1964) (citing criteria derived from the Federal Trade Commission Act).
C&W is not assisted materially by referring to G.L. c. 176D, §3(9) because a business against business 93A claim does not automatically lie for such a violation. Transamerica Insurance Group v. Turner Construction Co., 33 Mass.App.Ct. 446, 452 (1992); Polaroid Corp. v. The Travelers Indemnity Co., 414 Mass. 747, 754 (1993). C&W may not rely exclusively on the unfair claim settlement practices enumerated in G.L. c. 176D, §3(9) because §11 does not grant an independent right to recover for violations of c. 176D, as §9 does. Id. at 754.
In this case, Sentry adopted a self-interested interpretation of the Policy and steadfastly stuck to it. But such misinterpretation of an insurance policy and failure to acknowledge coverage, if based on a plausi *309 ble explanation, does not comprise an unfair or deceptive act or practice under G.L. c. 93A, §11. See Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987). Sentry had a plausible explanation for its position in the Policy language. Because C&W has not alleged facts sufficient to show that Sentry’s actions met the rascality standard as required under G.L. c. 93A, §11, Sentry is entitled to summary judgment on Count II.

Mass. General Laws c. 93A, §11 provides in pertinent part: “Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as the result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice . . . may, as hereinafter provided, bring an action in the superior court...”