Lu, John T., J.
INTRODUCTION
This case arises from a dispute between a general contractor and its owner, Above Grade Development, Corp. (Above Grade) and Robert Pagliarulo, Jr. (Pagliarulo) and a tree removal, site-clearing and excavation contractor and its owner, AAA Climbers Inc. (AAA) and Daniel Hibbard (Hibbard). During the fall of 2002, Above Grade engaged AAA to clear land at a small development off Walnut Street in Saugus.[2] AAA worked on the site for several months but Above Grade paid only a small portion of AAA’s bills. AAA brought this case claiming that it was entitled to recover under theories of breach of contract, quantum meruit and G.L.ch. 93A violations.
The court finds that Above Grade has failed to pay for some work for which it is contractually obligated to pay. Above Grade allowed AAA and Hibbard to do extra work on the site in the expectation that Above Grade would sell several lots to AAA. However, Hibbard could not obtain financing. The parties did not discuss what would happen in that event but Above Grade did not agree to pay for the extra work; AAA may not recover for the extra work on a contract theory. AAA does recover on a quantum meruit theory for some of the extra work. The court finds that Above Grade and Pagliarulo did not commit a G.L.ch. 93A violation because there was no misconduct rising to the level of a G.L.ch. 93A violation. The court finds no basis for imposing liability on Pagliarulo. Finally, the court finds for the defendants-in-counterclaim Hibbard and AAA on Above Grade’s counterclaims for breach of contract.
FINDINGS OF FACT
Based on the evidence presented and reasonable inferences from the evidence, the court makes the following findings of fact.
1. During September through December of 2002, AAA removed trees and stumps, cleared land, excavated soil and graded lots and a roadway at the Walnut Street property in Saugus.
2. AAA and Above Grade agreed on day rates for the work being performed.
3. Above Grade planned to create five lots.
4. While AAA was clearing lots 1 and 2, Pagliarulo agreed with Hibbard that Above Grade would sell lots 3, 4 and 5 to Hibbard. Hibbard planned to combine 4 and 5 into one lot.
5. Pagliarulo and Hibbard agreed that there would be a financing contingency providing that Hibbard could back out if he was unable to obtain financing.
6. The merger of lots 4 and 5 would require a variance, which Pagliarulo eventually obtained.
7. Above Grade agreed to give Hibbard a credit toward the purchase price of $300,000 for any work he did on lots 1 and 2 or other areas that Above Grade would be obligated to improve including portions of roadways and sidewalks.
8. Hibbard and Pagliarulo never discussed the details of the parties’ rights and obligations if the sale of the land did not take place.
9. All parties were reasonably sophisticated businessmen and Above Grade never agreed (and never would have agreed) to pay for improvements to the lots other than those that directly benefitted it.
10. Pagliarulo thought that if the sale did not go forward, Hibbard and AAA would lose the value of improvements by AAA to the lots to be conveyed.
11. It is difficult to determine what Hibbard thought would be the duties and responsibilities of the parties if the transaction did not close, but it seems likely that Hibbard either did not consider the possibility or thought he would be paid the agreed rate for his work toward the lots.
12. Hibbard’s possible assumption that he would be paid for work that did not benefit Above Grade or Pagliarulo, work that was eventually “undone” to return the lots to the original configuration, was unrealistic.
13. Hibbard did not invoice Above Grade for the project until a year after the work was completed, when Hibbard’s recollection was poor.
14. The court does not credit the accuracy of his invoices other than for some generalized facts, for example, the total number of days of excavation; the court rejects the apportionment of time between “Lots 1, 2 and road Bottom of Hill” and “Lots 3, 4 and 5 Top of Hill.” The claimed amount of time spent working on *126 lots 1 and 2 is not credible when measured against the testimony at trial related to the scale of the work.
15. As part of the agreement with Above Ground, AAA performed the following tasks on lots 1 and 2:
a. cut down trees;
b. removed trees and stumps;
c. excavated two foundation holes;
d. leveled a portion of a neighbor’s lot to deposit fill;
e. moved fill from lots 1 and 2 to a neighbor’s yard and lot 3.
16. AAA cleared and graded the road leading to lots 3, 4 and 5 for the benefit of Hibbard’s potential development of what would be Hibbard’s third and fourth lots. Although the clearing and grading was not part of the agreement between Above Grade and AAA some of the clearing and grading benefitted Above Grade, Above Grade knew of the benefit and it would be inequitable for Above Grade to retain the benefit without payment.
17. Hibbard exerted his best efforts but was unable to obtain financing to purchase lots 3, 4 and 5.
18. The agreement did not provide that if Hibbard was unable to obtain financing he would pay for Pagliarulo’s costs to obtain the variance or to “re-zone” the property back to a five-lot subdivision.
19. The contract price and the reasonable value of the benefit to Above Grade were as follows:
a. Cut and removal of Trees: $4,800
b. Excavating: $4,000
c. Grading: $6,000
20. $4,800 represents payment for the cutting and removal of trees along with $4000 for excavation, each of these amounts are contract damages.
21. $6000 represents the benefit conferred on Above Grade for grading. There was no agreement for the price of this work.
22. None of the other billed amounts were contract amounts or benefits to Above Grade.
23. Above Grade paid $4,800 for cutting and removal of trees in January of 2003 and is entitled to a credit for that amount.
24. Pagliarulo resented Hibbard’s failure to obtain financing, although he knew that Hibbard was entitled to back out. Hibbard’s inability to close cost Pagliarulo in excess of $15,000.
25. As a result, Pagliarulo was reluctant to pay for work he was obligated to pay for. Other than the relatively small amount of $675, Pagliarulo was unsure whether he was legally obligated to pay the portion that this court has determined he was required to pay. When he received the very late and inflated bill, much of which was for work that he could not under any circumstances be responsible for, his reluctance hardened into a resolve to refuse to pay the entire amount, even the amount which he knew he was obligated to pay, $675.
RULINGS ON AAA’S REQUESTS FOR RULINGS OF LAW
Requests for Rulings of Law 1-13 are ALLOWED.
RULINGS ON AAA’S REQUESTS FOR FINDINGS OF FACT
Requests for Findings of Fact 1,4-6, 8-9 and 11 are ALLOWED. Request 2 is DENIED. Request 3 is ALLOWED only as court has detailed in its findings of fact. Request 7 is ALLOWED but the benefit conferred is limited as the court has detailed in its findings of fact. Requests 10 and 11 are DENIED.
LEGAL DISCUSSION
A. Statute of Frauds
Above Grade and Pagliarulo argue that the Statute of Frauds bars enforcement of the contract to clear the land. The only possibly applicable portions of the statute of frauds, G.L.ch. 259, §1, are those that require a memorandum or note signed by the person against whom a contract is enforced (1) when a contract is for the sale of any interest in land or (2) for an agreement not to be performed within one year.
The court has found that there was a contract for a limited amount of the work claimed by AAA and Hibbard, that is, the cutting and removal of trees and excavation. This was a contract for services; AAA was only to cut and remove trees and excavate. It is of no moment that the sale of the land did not take place; the agreement at issue was the agreement to perform services, not the agreement to sell the lots.
The contract could be (and was) performed within one year, taking it outside the statute of frauds. Doyle v. Dixon, 97 Mass. 208 (1867) (agreement not to compete for five years does not violate the statute because the party could die within a year).
B. Quantum Meruit
“Generally, if a landowner has requested that a person construct a structure on his or her property, it is reasonably expected that the landowner will pay for the services and benefit conferred, even if there was no express contract for the construction or if a contract has been violated.” Salamon v. Terra, 394 Mass. 857, 859-60 (1985). AAA is entitled to be paid for the benefit it conferred in grading at the Walnut Street site, even though there was no agreement or contract that AAA perform the grading. Recovery in quantum meruit assumes that no valid contract exists covering the work. Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993) (trial judge must first determine whether there was a contract governing the services in dispute). The only contract in this case covered clearing lots and excavation and not the grading for which the AAA may recover in quantum meruit. Above Grade had the benefit of a portion of the grading and AAA recovers in the amount of that benefit, six thousand dollars.
*127 C. G.L.ch. 93A
The conduct here does not rise to the level of a violation of G.L.ch. 93A. AAA’s best argument is that Above Grade’s refusal to pay the contract damages of $675, on demand, “attain[ed] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). Although this is a fairly close case, on balance, the court is persuaded that AAA’s refusal to pay was not an unfair or deceptive act within the meaning of G.L.ch. 93A, §11. After Pagliarulo spent considerable funds to re-zone the parcel and allowed Hibbard to drastically re-grade the site, Hibbard backed out because of a lack of financing. Pagliarulo then restored the original zoning and lot configuration. A year later AAA gave Pagliarulo an inflated bill. Pagliarulo doubted the legitimacy of all but a very small portion of the bill. He consciously chose not to remit payment for that small portion of the bill in light of the disputed portion.
“(C)onduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes.” Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991). But, something more than an intentional breach is required. See Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226 (1992). To constitute a 93A violation, the breach must have “an extortionate quality that gives it the rancid flavor of unfairness.” Id. “In the absence of conduct having that quality, a failure to perform obligations under a [contract], even though deliberate and for reasons of self-interest, does not present an occasion for invocation of c. 93A remedies.” Id. Pagliarulo did not choose to withhold payment from AAA in order to gain leverage over it or to extort extra benefits. He withheld payment because he disputed the legitimacy of 95% of the bill. His conduct does not raise the eyebrow of one inured to the rough and tumble of the business world. Duclersaint v. Federal National Mortgage Association, 427 Mass. 809, 814-15 (1998) (refusal to pay based on difference of opinion as to whether the plaintiff was due money prevented finding of G.L.ch. 93A violation). There is no G.L.ch. 93A violation.
ORDER
Judgment shall enter for the plaintiff AAA Climbers, Inc. on Count I in the amount $4000. On Count II judgment shall enter for the defendant Robert Pagliarulo, Jr. On Count III judgment shall enter for the plaintiff AAA Climbers, Inc. in the amount of $6000. On Counts IV and v. judgment shall enter for the defendant Robert Pagliarulo, Jr. On the counterclaims, judgment shall enter for the plaintiff/defendant-in-counterclaim AAA Climbers, Inc.

The Court adopts the parties’ practice of describing the development as the Walnut Street property, although not all of the lots are located on Walnut Street.