Smith, J.
This case at its heart involved allegations of insurance claim fraud. Specifically, Sentry Insurance Company’s (Sentry) claimed that defendant Antonio Moda (Moda) submitted an insurance claim for property damage on behalf of Locke Manufacturing Company[1] in support of which he included two false invoices which were inflated in the amount of $38,142.48 to pay for work which was performed in the construction of his home. Sentry claims that it is entitled to recover from Moda as damages the $603,521.10 it paid to Locke Manufacturing Company on the insurance policy claim, resulting from the roof collapse because Moda’s fraud voided the insurance policy ab initio. Despite admissions Moda made in his guilty plea colloquy before the Federal District Court for the District of Massachusetts[2] that he indeed persuaded a contractor[3] to inflate an invoice submitted to Locke Manufacturing Company for repairs by some $9,647.00, Moda claims that he committed no fraud or if he had, the plaintiff suffered no damages or only damages amounting to $9,647.00, the amount of the overcharge of one[4] of the two inflated invoices.
After a trial on Sentry’s claim for damages for fraud and intentional misrepresentation against defendant Moda, the Jury returned a verdict finding that Moda did not commit fraud in connection with the insurance claim of Locke Manufacturing Co. Additionally, the Jury returned an advisory G.L.c. 93A verdict in favor of the defendant. Specifically, the Jury found that defendant Moda did not commit any unfair and deceptive practices in his dealings with the plaintiff.
FACTS
At all times material hereto the Plaintiff provided a policy of insurance to Locke Manufacturing Company, Inc., covering the premises located at 44 Sixth Road, Woburn, Massachusetts. On or about January 30, 1987 the roof at Locke Manufacturing facility collapsed after a heavy snowfall. At the time of the roof collapse on January 30, 1987 defendant Moda was a Shareholder, Director, and President of Locke Manufacturing Company, Inc. Moda personally participated in the submission of the insurance claim to Sentry on behalf of Locke Manufacturing Company for damages arising out of the January 30, 1987 roof collapse and allegedly covered by the policy of insurance. In connection with its insurance claim, Locke Manufacturing Company submitted a Dowgiert Building & *34 Remodeling (Dowgiert) invoice dated April 4, 1987 in the amount of $13,647.58 in support of its building damage claim. The April 4, 1987 Dowgiert invoice was false and inflated by approximately $9,647.58.
Although Sentry advanced $136,000.00 to Locke Manufacturing Company on its insurance claim, the parties could not reach an agreement as to the value of the claim. Consequently, Locke Manufacturing Company and Sentiy submitted the matter to a reference pursuant to the terms of the policy. After several hearings conducted between September 14, 1989 and Februaiy 8, 1990, the referees, on March 6, 1991, returned an award of $460,997.09 to Locke Manufacturing Company, less the $136,000.00 advance and the $1,000.00 policy deductible. Of note, Moda testified at the hearings in support of Locke Manufacturing Company’s claims. The false Dowgiert invoice was offered in evidence and authenticated during Moda’s testimony as an invoice for work performed in connection with the insurance claim at that hearing.
On March 22, 1991, Moda executed and submitted to Sentiy a Subrogation Receipt and Assignment in the amount of $603,231.18, which represented the referees’ award with interest, less the policy deductible. Sentiy paid the award in full. Thus, Sentry made payments to Locke Manufacturing Company on its insurance claim totaling $603,231.18.
On or about April 9, 1987 Moda gave a Locke Manufacturing Company check, number 15289, in the amount of $9,647.58 to Dowgiert. On or about April 15, 1987 Dowgiert signed over the Locke Manufacturing Company check number 15289 in the amount of $9,647.58 to Moynahan North Reading Lumber, Inc. as payment for lumber used in the construction of Moda’s Boxford residence. (See Indictment at Paragraph H.) Moda knew or reasonably should have known that the Dowgiert invoice was false and inflated in the amount of approximately $9,647.58. In early Februaiy 1987, shortly after Dowgiert had erected two temporary walls, Ted Dowgiert, Dowgiert Building & Remodeling’s principal, visited Locke Manufacturing Company and met with Moda. Dowgiert had prepared a bill which was for under $5,000.00. Moda told Mr. Dowgiert to prepare a bill that included all the materials Dowgiert had used. Dowgiert then asked if he should include on the bill lumber supplied at Moda’s house in West Boxford. Moda responded, “Put everything on it.” (See Probation Memorandum, pages 10-11.)
In connection with its insurance claim, Locke Manufacturing Company also submitted to Sentiy Insurance Company an invoice from HB Electric dated April 10, 1987 in the amount of $80,032.03. (See Indictment Paragraph G.) The HB Electric invoice was inflated by an approximate amount of $28,495.00 by the inclusion of cost for labor and/or materials used in the construction of Moda’s residence in West Boxford. (See Indictment Paragraph 24 0, I, K, M, P, Q; See also Moda’s response to Request For Admissions.) Moda knew or reasonably should have known that the HB Electric invoice was false and inflated and included charges for labor or material used in the construction of his residence in West Boxford.
Moda engaged in a deliberate scheme to defraud Sentiy by submitting or causing to be submitted to Sentiy invoices which included charges for labor and/or materials utilized in the construction of his personal residence in West Boxford. Moda testified at his deposition in this action, which was read into evidence at trial, that he had read the Probation Memorandum prepared by his attorneys prior to its submission to the United States District Court in connection with his plea to criminal charges and was satisfied that the contents of the Memorandum were true and accurate to the best of his knowledge and ability.
This Court also finds that Moda was not acting within the scope of his employment when he had the repair invoices falsified. There is no evidence that Moda conspired with or even informed any other principal or executive at Locke Manufacturing Company about his scheme. There is no evidence that any other principal or agent of Locke Manufacturing Company knew about Moda’s scheme and winked at it or tacitly approved of it. If anything, Moda was stealing from Locke Manufacturing Company by taking advantage of its loss to make money for himself. Whatever claims Sentiy may have had against Locke Manufacturing Company for insurance fraud or violation of G.L.c. 93A, §11, those claims were resolved when Sentry paid Locke Manufacturing Company’s insurance claim after the March 6, 1991 referees’ award and when Locke Manufacturing Company (after it became LKM) subsequently settled Sentry’s legal action against it for $350,000. Finally, the Court finds that Locke Manufacturing Company did suffer damages from the 1987 roof collapse which fell within the insurance policy and which entitled Locke Manufacturing Company to payment on its claim from Sentiy. The uncontested final decision of the referees resolved in Locke Manufacturing Company’s favor the legitimacy of its insurance claim.
n. RULINGS OF LAW
General Laws chapter 93A Section 11 provides in pertinent part that:
Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by Section two or by any rule or regulation issued under paragraph (c) of Section two may, as hereinafter provided, bring an action in the superior court. . .
*35 There is no dispute that the transaction between Moda and Sentry regarding Moda’s submission of the fraudulent invoices is a commercial transaction between experienced business people and that the conduct fell •within the meaning of “trade and commerce” as used in G.L.c. 93A, §11. Under c. 93A, §11, the standard for determining whether a business practice is unfair or deceptive is the standard applicable to the world of commerce. It is not a particularly high or precious moral standard. Rather, in order to find that defendant violated c. 93A, the Court must find that Moda’s conduct attained a level of rascality which would raise the eyebrow of someone who is hardened to the rough and tumble world of commerce. Wasserman v. Agnastopolous, 22 Mass.App.Ct. 672, 679 (1986); Levings v. Forbes & Wallace, Inc., 8 Mass.App. 498, 504 (1979). Misrepresentations of material facts may constitute unfair and deceptive practices under §11. Levings, supra, at 504. Although the party claiming violation of c. 93A due to misrepresentations need not demonstrate actual reliance, there must be a causal relationship between the misrepresentation and the injury. Heller Financial v. Insurance Co. of North America, 410 Mass. 400, 409 (1991). Intentional fraud constitutes a willful and knowing violation of G.L.c. 93A sufficient to trigger an award of multiple damages as a matter of law. Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 858 (1986).
The conduct described at pages 10 and 11 of the Probation Memorandum submitted by Moda through his attorneys to the United States District Court in connection with his plea to criminal charges constitutes, as a matter of law, fraud in the submission of the insurance claim to Sentry and an unfair and deceptive act or practice in violation of G.L.c. 93A, § 11 towards Sentry. The conduct described at pages 10 and 11 of the probation memorandum submitted by Moda through his attorneys to the United States District Court in connection with his plea to criminal charges constitutes a willful and knowing violation of M.G.L.c. 93A as a matter of law. Further, Moda’s plea of guilty to criminal charges in the United States District Court together with statements made during the plea-taking colloquy constitute admissions which are admissible in evidence in this action and constitutes prima facie evidence of fraud by Moda in this action. See, Aetna Casualty & Surety Co., v. Niziolek, 395 Mass. 737, 749 (1985).
Finally, the G.L.c. 93A Advisory Verdict is not binding upon the trial judge. Rather the trial judge may make findings “directly contrary to the jury on the issues submitted to them.” Chamberlayne Sch. & Chamberlayne Jr. College v. Banker, 30 Mass.App.Ct. 346, 354 (1991). Based upon the same factual pattern presented to the jury, this Court finds that Moda did commit unfair and deceptive business practices against Sentry when he fraudulently submitted two false invoices in connection with Locke Manufacturing Company’s insurance claim with the intent to defraud Sentry. Further, the Court finds that Moda’s unfair and deceptive practices were willful and knowing.
Having found that Moda committed an unfair or deceptive act or practice in violation ofG.L.c. 93A, §11, the Court must award money damages for the actual damage caused by the unfair or deceptive act or practice including all losses which were the foreseeable consequence of the defendant’s unfair or deceptive act or practice, plus costs and reasonable attorneys fees. See DiMarzo v. American Mutual Insurance Co., 389 Mass. 85, 101 (1983). Further, where the Court finds that the defendant’s actions were willful and knowing violations of G.L.c. 93A, the Court must award multiple damages equal to two or three times the actual damages, plus costs and reasonable attorneys fees. See Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 779-80 (1986); G.L.c. 93A, §11.
DISCUSSION
As indicated above, the Court finds that Moda knowingly submitted or had someone submit on his behalf two false invoices with respect to the filing of Locke Manufacturing Company’s insurance claim with Sentry; that he did so with the intent to deceive Sentry about the value of the loss; and that his conduct constituted unfair and deceptive practices under G.L.c. 93A, §11. Moda’s judicial admissions in the Federal District Court criminal proceeding as to his fraudulent actions and the documents admitted in evidence in this case lead to no other conclusion. The difficult issue concerns damages.
The essence of Sentry's G.L.c. 93A claim for damages is that had it known of the false invoices submitted by Moda in support of Locke Manufacturing Company’s insurance claim, it would have voided the insurance policy in accordance with paragraph 9[5] of the “General Conditions” section of the policy. Hence, Sentry would not have paid out or settled Locke Manufacturing Company’s claim for any amount other than the paid premiums. Sentry therefore claims that it suffered damages in the amount of the $603,231.18 it paid on the insurance claim, less any appropriate offset which may be required by Sentry’s settlement with LKM (Locke Manufacturing Company’s successor), plus consequential damages, if any, proximately caused by the misrepresentation. In other words, Sentry wants to recover damages under the “benefit of the bargain” measure of damages. Danca v. Taunton Savings Bank, 385 Mass. 1, 8 (1982); Restatement, Second, Torts §549.
Moda argues that Sentry has suffered no loss of money as a result of the fraud because the $350,000 it received from its settlement with LKM exceeds the amount of damages Sentry suffered in connection with the fraud. Moreover, since Locke Manufacturing Company and not Moda was the party to the insurance policy, the contractual remedy cannot apply to Moda. *36 According to Moda’s view of the measure of damages, Sentry’s damages amounted to its out of pocket losses — the difference between the inflated costs on the false invoices and the true costs, approximately $38,142.58. Anzalone v. Strand, 14 Mass.App.Ct. 45, 48-49 (1982). This Court agrees with Moda upon the grounds and for the reasons set out in defendant’s Motion In Limine Of Antonio Moda To Preclude Evidence of Certain Damages, which this Court granted on the first day of trial.
CONCLUSION
Accordingly, the Court finds that Moda submitted false invoices in connection with the filing of Locke Manufacturing Company’s insurance claim with Sentry, that he did so knowingly with the intent to deceive Sentry about the value of the loss, that his conduct constituted unfair and deceptive practices in violation of G.L.c. 93A, and that the violation was willful and knowing. Further, as a result of Moda’s violation of G.L.c. 93A, Sentry suffered damages. The damages to Sentry are its out of pocket losses of $38,142.58. Because the Court finds that Moda’s violation of the statute was willful and knowing, the Court shall treble the actual damages to $114,427.74. Sentry is also entitled to costs and reasonable attorneys fees.
ORDER
1. Judgment shall enter in favor of plaintiff Sentry Insurance Company on its G.L.c. 93A claim against defendant Antonio Moda.
2. Judgment for G.L.c. 93A damages of $38,142.58 trebled to $114,427.74 shall be awarded to plaintiff Sentry Insurance Company, plus costs and reasonable attorneys fees.
3. Plaintiff Sentry Insurance Company shall file its Motion For An Award Of Attorneys Fees And Costs along with supporting affidavits within 65 days of the date of this Order. If defendant Antonio Moda opposes the amount of the costs and attorneys fees being requested, then Moda shall file his memorandum in opposition within 30 days after Sentry has filed its motion for Motion For An Award Of Attorneys Fees And Costs.

 Locke Manufacturing Company subsequently became LKM Industries, Inc. For the sake of clarity, the Court will use the Locke Manufacturing Company name.

 United States v. Antonio Moda, Docket No. CR92-10295 March 29, 1993 (Hand, J.).

 Dowgiert Building & Remodeling, a carpentry contractor used by Locke Manufacturing Company to repair some of the damage caused by the roof collapse.

 In his change of plea colloquy, Moda admitted to having inflated one of the invoices and made no admission regarding the other one.

 Paragraph 9 states:
Concealment or fraud: This policy is void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.